In re **ROBERTS METAL FABRICATION, INC.,** Debtor.

**ROBERTS METAL FABRICATION, INC., Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Bankruptcy No. 89–22032–7. Adv. No. 91–6039.**

United States Bankruptcy Court, D. Kansas.

Dec. 4, 1992.

John H. Trader, Kansas City, MO, Joe Vise, Shawnee, KS, for plaintiff.

James J. Long, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, DC, Nora J. Foster, Asst. U.S. Atty., Kansas City, KS, for defendant.

Eric C. Rajala, Overland Park, KS, Trustee.

John Foulston, Wichita, KS, U.S. Trustee.

## MEMORANDUM OPINION AND ORDER

BENJAMIN E. FRANKLIN, Chief Judge.

This matter comes on before the Court pursuant to the December 3 and 4, 1991 trial on the complaint of Roberts Metal Fabrication, Inc. (hereinafter "debtor") seeking abatement of tax penalties pursuant to 11 U.S.C. § 505(a). The debtor appeared by and through its attorney, John H. Trader and local counsel, Joe Vise. The United States of America appeared by and through its attorney, James L. Long, United States Department of Justice, Tax Division. Upon the filing of proposed findings of fact and conclusions of law by the parties, the Court took the matter under advisement.

## FINDINGS OF FACT

Based upon the pleadings, the record and the testimony of witnesses, this Court finds as follows:

1. That during all relevant quarters in issue, Donald B. Roberts, III, was the president and owner of 100% of debtor's outstanding common stock.

2. That in the early 1970's, Mr. Roberts retained the services of an accountant, Bill Blanck, to prepare financial statements, reconcile the bank account, and prepare corporate tax returns, including federal (Forms 940 and 941) and state payroll returns.

3. That Steve Madden started working for the debtor in 1979 and was the company's general business and office manager during all relevant quarters in issue. Janet Stoway, who started with debtor in August of 1987, performed general office work including maintaining of accounts payable and accounts receivable summaries.

4. That on or about January 31, 1986, Mr. Roberts suffered a cerebral hemorrhage stroke.

5. That during the quarters in issue, Mr. Roberts came into the office sporadically. However, Mr. Roberts was at all times accessible by beeper.

6. That subsequent to Mr. Roberts' stroke, the debtor continued to file its Employer's Quarterly Federal Tax Returns (Forms 941), and to pay its employment taxes for the taxable quarters ending March 31, 1986, through June 30, 1987.

7. That in January, 1987, Mr. Roberts' spouse filed a petition for divorce.

8. That during the pendency of Mr. Roberts' divorce, debtor continued to file its Employer's Quarterly Federal Tax Returns (Forms 941), and to pay its employment taxes for the taxable quarters ending March 31, 1987, and June 30, 1987.

9. That during the relevant quarters in issue, Mr. Roberts hired employees, signed checks, signed tax returns, paid the State of Kansas' withholding tax liability, and was involved in business activities of the debtor.

10. That on or about mid-August, 1987, Mr. Roberts contacted and hired an off-premises bookkeeping service to handle debtor's payroll. This service calculated the debtor's employment taxes, prepared the Employer's Quarterly Federal Employ-

ment Tax Returns (Forms 941), and prepared all payroll checks, including the weekly tax deposit check. These returns, along with the payroll checks, were delivered to the receptionist/secretary who would sign the payroll checks, not including the payroll tax deposits, and deliver the completed payroll return to either Mr. Roberts or Mr. Madden. The payroll service provided debtor with a return that was completed except for the signature, and checks made payable to the IRS. The completed returns merely needed to be signed and mailed along with the completed tax deposit check.

11. That the IRS assessed penalties against the debtor for its failure to timely file its Employer's Quarterly Federal Tax Returns (Forms 941) for the taxable quarters ending September 30, 1987, through September 30, 1989, and for its failure to timely pay its employment taxes or make the employer's employment tax deposits for those quarters. The IRS also assessed penalties against the debtor for its failure to timely pay its employer's annual unemployment (FUTA) taxes for the fiscal year ending August 31, 1988.

12. That Mr. Roberts and Mr. Madden were fully aware of the legal responsibility to timely file federal employment tax returns, to timely pay, and to timely deposit federal employment taxes.

13. That no internal control procedures were established to determine whether Mr. Roberts or Mr. Madden timely filed the returns in issue, or timely paid the employment taxes in issue.

14. That on December 19, 1989, debtor filed this bankruptcy under Chapter 11 of Title 11, United States Code. The case was converted to a case under Chapter 7 on March 19, 1992.

## CONCLUSIONS OF LAW

Debtor is seeking abatement of penalties assessed against it for its failure to timely file federal employment tax returns and for failure to make timely deposits and payments of federal employment taxes for the period of September 30, 1987, through September 30, 1989.

The Internal Revenue Code imposes a penalty upon any taxpayer who fails to file a timely tax return, or fails to pay the tax that is due before the date prescribed for payment. 26 U.S.C. §§ 6651(a)(1) and (a)(2). These penalties are added to the tax "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." *Id.* Likewise, the Internal Revenue Code imposes a penalty for failure to timely make tax deposits "unless it is shown that such failure is due to reasonable cause and not due to willful neglect." *Id.* at § 6656.

██ "To escape the penalty, the taxpayer bears the heavy burden of proving both (1) that the failure did not result from 'willful neglect,' and (2) that the failure was 'due to reasonable cause.'" *United States v. Boyle,* 469 U.S. 241, 245, 105 S.Ct. 687, 689, 83 L.Ed.2d 622 (1985). Although not defined in the Code, "willful neglect" has been read as meaning a conscious, intentional failure or reckless indifference. *Id.* (citations omitted). The Code also fails to define "reasonable cause," but the relevant Treasury Regulation provides in pertinent part as follows:

If the taxpayer exercised ordinary business care and prudence and was nevertheless unable to *file* the return within the prescribed time, then the delay is due to a reasonable cause. A failure to *pay* will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory showing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship ... if he paid on the due date.

26 C.F.R. § 301.6651–1(c)(1) (Emphasis added).

The Internal Revenue Service has identified specific causes that it considers to constitute "reasonable cause" for failure to timely file a return. These causes include:

unavoidable postal delays; the taxpayer's timely filing of a return with the wrong IRS office; the death or serious

illness of the taxpayer or a member of his immediate family; the unavoidable absence of the taxpayer; destruction by casualty of the taxpayer's residence, records or place of business; the taxpayer's reliance on the erroneous advice of an IRS officer or employee; the failure of the IRS to furnish the taxpayer with the necessary forms in a timely fashion; the inability of an IRS representative to meet with the taxpayer when the taxpayer makes a timely visit to an IRS office in an attempt to secure information or aid in preparation of a return; the taxpayer's inability to obtain necessary records for determining amount of tax liability for reasons beyond his control; and the taxpayer's failure to file is based upon his reasonable reliance upon the advice of a tax advisor that the return need not be filed.

*Roberts v. Commissioner*, 860 F.2d 1235, 1241 (5th Cir.1988) (citing Internal Revenue Manual (CCH) § 4562.2 (Feb. 25, 1987)).

■ Debtor argues that Mr. Roberts' physical and emotional problems provide a basis for finding "reasonable cause." For the illness to qualify as "reasonable cause," the illness must be present at the time the return is customarily prepared and must be of such a degree as to render the taxpayer physically or mentally incapable of preparing a return or conducting any business activity, and the taxpayer must not even conduct other business. *Ward v. United States*, 58–2 USTC para. 9922, at 69,706, 2 A.F.T.R.2d 5904 (E.D.Tenn.1958). The evidence shows that Mr. Roberts did conduct other business during the quarters in issue.

Furthermore, the illness must render *the taxpayer*, not merely an employee, incapable of filing the return. "Neither economic difficulties nor the illness of an employee constitute reasonable cause for failure to file returns or pay taxes." *Wolfe v. United States*, 612 F.Supp. 605, 608 (D.Mont. 1985), *aff'd* 798 F.2d 1241 (9th Cir.1986), *cert. denied*, 482 U.S. 927, 107 S.Ct. 3210, 96 L.Ed.2d 697 (1987). Debtor cites *Gyro Engineering Corp. v. Commissioner*, T.C.Memo. 1974–288, 33 T.C.M. (CCH)

1343, 1354 (1974), where the court considered the corporation's contention that its president was unable to file because of ill health. The court in *Gyro* noted that "[i]llness is 'reasonable cause' if it can be shown that *the taxpayer* is prevented from filing a timely return because of such illness." *Id.* (Emphasis added). In *Gyro*, the court found that the corporation had failed to prove that its president's illness was a reasonable cause for failure to file. *Id.* In this case, the taxpayer is the debtor corporation, not Mr. Roberts. Debtor has failed to prove that Mr. Roberts' physical and emotional problems prevented debtor from complying with its tax obligations, especially in light of debtor's argument that Mr. Madden, not Mr. Roberts, was responsible for the employment tax obligations during the quarters in issue.

Debtor still maintains that Mr. Roberts' physical and emotional problems provide a basis for finding "reasonable cause," apparently arguing that Mr. Roberts' physical and emotional problems combined with his absence from the office during the quarters in issue prevented Mr. Roberts from detecting that the tax obligations were not being taken care of.

The court in *Obstetrical & Gynecological Group, P.A. v. United States*, 79–2 USTC para. 9511, at 87,839, 44 A.F.T.R.2d 79–5438 (D.D.C.1979), held that "[r]easonable cause for failure to timely perform federal employment tax obligations cannot be proven merely by showing that the responsibility for performing this obligation has been assigned to an employee or agent of the taxpayer because each taxpayer has a non-delegable duty to timely perform its federal employment tax obligations."

In *Obstetrical & Gynecological Group*, the corporation's employment tax obligations were handled by an accounting firm until late 1975, at which time the corporation hired an office manager to take over those duties. *Id.* at 87,837. The IRS assessed penalties against the corporation for the fourth quarter of 1976 through the fourth quarter of 1977. The court held that because the office manager knew of the corporation's federal employment tax

obligations and also knew of the failure to make timely payments, deposits and a timely filing, her repeated failures negate the existence of a reasonable cause for delay and reflect a willful neglect to perform those obligations. *Id.* at 87,839. The court held that the absence of reasonable cause and the existence of willful neglect on behalf of the employee may be imputed to the corporation to establish its absence of reasonable cause and the existence of willful neglect. *Id.*

This Court finds that the debtor has failed to show that it exercised ordinary business care and prudence in providing for the filing of its tax returns or in providing for the payment of its tax liability. Debtor's officers and directors failed to establish internal checks and controls which would have enabled them to discover the delinquent filing of federal employment tax returns and delinquent payments of federal employment taxes and deposits.

The court in *Obstetrical & Gynecological Group,* held that:

> Plaintiff corporation's failure to establish any form of procedure to review [the employee's] compliance with federal employment tax obligations demonstrated a lack of ordinary business care and prudence. This lack of ordinary business care and prudence is an additional factor which negates plaintiff's claim that its untimely filing, payments and deposits were excused by reasonable cause.

*Id.* at 87,839. *See also Universal Concrete Products, Corp., v. United States,* 90–2 U.S.T.C. para. 50,440, at 85,401, 1990 WL 106584 (E.D.Pa.1990), *aff'd* 941 F.2d 1204 (3rd Cir.1991) ("a corporation's failure to implement internal checks and controls over the employee responsible for tax obligations demonstrates a *lack* of ordinary business care and prudence, and as such, negates a claim that late filings, deposits, and payments are due to reasonable cause") (citations omitted).

In *Universal Concrete,* the court held that the corporation had failed to demonstrate "reasonable cause" in that there was an absence of showing that ordinary business care and prudence were exercised be-cause the corporation did not implement an internal monitoring system over the employee responsible for tax obligations. *Id.* The court noted that there were signs of the employee's errant behavior, and nevertheless, the corporation continued to entrust the employee with ultimate responsibility for their tax returns. *Id.* There was evidence that Mr. Madden was admitted into a rehabilitation program in September of 1987 and did not return to work until after Thanksgiving of that year. Nevertheless, debtor maintains that Mr. Madden remained responsible for debtor's tax obligations.

Debtor argues that Mr. Roberts did not follow up with Mr. Madden with respect to the system that was set up because it had always worked. Despite this contention, there was evidence that debtor had been delinquent in complying with its tax obligations on prior occasions. (R. at 76–77). Debtor also argues that everyone knew their responsibilities, and Mr. Roberts did not know nor have reason to believe that this system had broken down in that all he was ever told was that things were going great.

Despite this argument, there was evidence that the employees' responsibilities were unclear and several employees were aware of the tax problem. When asked who had the responsibility of getting the payroll tax deposit checks signed and mailed, Janet Stoway testified that "[w]ell, for the first couple of years that I was there, I don't think anybody really had the responsibility of doing it. Towards the end, after it got a little bit organized, then I think I put most of them in the envelope and mailed them." (R. at 53). Janet Stoway testified that "there was nothing in the company that was on a regular basis. Nobody knew what they was supposed to be doing." (R. at 130). There was also testimony indicating that the employees believed that Mr. Roberts' signature was required on the checks to pay the tax liability. Mr. Madden testified that he notified Mr. Roberts of the delinquent tax obligations and had a continuing discussion with Mr. Roberts concerning debtor's tax

situation. (R. at 179–80). *See Thom v. United States*, 80–2 USTC para. 9814, at 85,687, 47 A.F.T.R.2d 81–430 (D.Or.1980) (plaintiff failed to show that he had any other type of internal controls which would help him to discover any tax delinquencies, even though plaintiff alleged that he occasionally asked the employee if the appropriate tax returns had been filed and that she repeatedly assured him they had been.)

The failure of other employees within the corporate structure to timely file the employment tax returns, to timely pay its employment taxes, and to timely make its federal employment tax deposits, demonstrates that debtor failed to implement adequate internal checks and controls over these employees. Debtor failed to exercise ordinary business care and prudence when it failed to establish internal controls to see to it that these duties were delegated to a supervised employee in the president's absence.

██ Debtor also argues that it could not have paid the tax without suffering an undue hardship. Debtor argues that it was faced with a choice of defaulting on a loan and being forced out of business or paying the federal payroll taxes. "Undue hardship" is defined as more than an inconvenience to the taxpayer. "It must appear that substantial financial loss, for example, loss due to the sale of property at a sacrifice price, will result to the taxpayer for making payment on the due date ..." 26 C.F.R. § 1.6161–1(b). The Court finds that debtor has failed to make a satisfactory showing that it exercised ordinary business care and prudence in providing for payment of its tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship if it paid on the due date. From 1986 to 1989, Mr. Roberts withdrew approximately $340,000 from the debtor corporation in the form of shareholder loans. When asked whether that

$340,000 could have gone to pay taxes, Mr. Roberts' testified that "[i]f I would have known that they were owed they would have been paid ... I wish it would have." (R. at 148). Debtor also argues that it is understandable why Mr. Roberts was told by his staff that things were going great in light of debtor's gross sales during the years in question.[1] Debtor has not shown that it would have suffered an "undue hardship" if it had paid its taxes on the due date.

Debtor has failed to sustain its burden of proving that the untimely filing of its federal employment tax returns, untimely payment of federal employment taxes, and its failure to make federal employment tax deposits were due to a "reasonable cause" and not due to "willful neglect."

IT IS THEREFORE, BY THE COURT, ORDERED That debtor is liable for the penalty assessments made against it pursuant to 26 U.S.C. §§ 6651(a)(1), (a)(2) and 6656 for the period of September 30, 1987, through September 30, 1989.

This Memorandum shall constitute my findings of fact and conclusions of law pursuant to Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure.

---

**1.** In Plaintiff's Proposed Findings of Fact and Conclusions of Law, debtor argues that:

With all of this emotional and physical turmoil going on in Don's personal life, the company's operations successfully continued with gross sales of $890,557.51 for the fiscal year ending August 31, 1987; $1,273,365.02 for the

fiscal year ending August 31, 1988; and, $1,803,261.23 for the fiscal year ending August 31, 1989. It is understandable why all that Don was ever told by the staff was that things were going great.

Pl.'s Proposed Findings of Fact and Conclusions of Law at 6.