In re SLATER CORPORATION, Debtor.

Bankruptcy No. 94–21731–BKC–RBR.

United States Bankruptcy Court, S.D. Florida.

Oct. 13, 1995.

**Secured:**

| Tax | Period | Amount | Penalty | Interest |
|---|---|---|---|---|
| FICA | 12/31/91 | 19,335.28 | 18,904.89 | 9,049.59 |
| FICA | 03/31/92 | 1,180.47 | 6,724.00 | 2,855.41 |
| FICA | 06/30/92 | 6,386.27 | 5,843.83 | 2,234.81 |
| FICA | 09/30/92 | 15,942.71 | 7,851.41 | 3,033.39 |
| FICA | 03/31/93 | 25,239.23 | 7,058.04 | 2,118.11 |
| FICA | 06/30/93 | 10,313.90 | 2,607.43 | 640.40 |
| Total: | | 78,397.86 | 48,989.60 | 19,931.71 |

**Priority:**

| Tax | Period | Amount |
|---|---|---|
| FICA | 05/03/94 | 1,988.62 |
| FUTA | 05/03/94 | 531.88 |
| Total: | | 2,520.50 |

**Unsecured General:**

| Tax | Period | Penalty/Interest | |
|---|---|---|---|
| FICA | 03/31/94 | Priority: | 252.05 |
| | | Unsecured: | 115.68 |
| Total: | | | 367.73 |

The liabilities arise from the Debtor's failure to deposit federal social security taxes and income taxes withheld from its employees and from its failure to pay its portion of the social security taxes.

The fact that the Debtor became delinquent at some point in time in its tax payments is not in dispute. The IRS initially contacted Mr. Slater about the subject obligations sometime in 1991. At that time, the Revenue Officer demanded payment in full of all delinquent tax liabilities. She also advised Mr. Slater of the IRS's power to place a lien on the Debtor's assets and levy the Debtor's accounts if the taxes were not paid.[1]

In response to the collection efforts made by the IRS, the Debtor began making payments to the IRS on its tax obligations. The record reflects that during the years 1991 through 1994, substantially all of the available cash resources of the Debtor, as well as personal assets of the principals, the Slaters, were devoted to either making payments to the IRS, or to complete construction contracts in order to receive payment (which, in turn, were paid over in lump sums to the IRS).

During this period, the Slater's contributed approximately $300,000.00 of personal assets

Francis D. Sheehy, Fort Lauderdale, FL, for Slater Corp.

Robert J. Higgins, U.S. Department of Justice, Washington, D.C., for U.S.A., I.R.S.

### MEMORANDUM ORDER SUSTAINING DEBTOR'S OBJECTION TO CLAIM OF INTERNAL REVENUE SERVICE

RAYMOND B. RAY, Bankruptcy Judge.

THIS matter came before the Court for hearing on July 26, 1995 and August 9, 1995 upon the Objection to Claim of Internal Revenue Service ("IRS") filed by the Slater Corporation (the "Debtor"). In addition, on July 3, 1995 the Court granted the Debtor's motion to compel discovery and for sanctions against the United States, and reserved ruling on the specific sanctions to be imposed. Upon consideration of the arguments of counsel, the testimony of witnesses and underlying documentation submitted by the parties and admitted into evidence, as well as applicable authorities, the Court finds as follows.

### FINDINGS OF FACT

On May 3, 1994, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The IRS filed a timely proof of claim, which was subsequently amended in the total amount of $150,207.40, to include the following liabilities:

---

1. Mr. Slater was already aware of the IRS's powers. In 1991, the IRS levied upon the Debtor's bank account and a construction project with a Broward County agency. The IRS was quickly paid and that particular levy released. However, that levy apparently had a deep and lasting effect upon the Debtor and its principal and resulted, in no small part, with the subsequent interaction between the Debtor and the Revenue Officers who were administering this Debtor during the time period of 1991 through 1994.

to the corporation. These assets include commercial property and equity in Mr. and Mrs. Slater's personal residence. The commercial property was pledged as security for the business line of credit. When the property was sold, the business line of credit had to be satisfied to obtain a release of the mortgage, and the majority of the proceeds were contributed to the business. In addition, the Slaters obtained a second mortgage (home equity loan) on their personal residence in order to provide $75,000.00 to the business.

Mr. Slater testified that the Debtor made reasonable efforts to conserve its assets in marketable form to satisfy the tax liability, but that the Debtor was still unable to pay the tax when it was due. He further testified that the corporation did not dissipate assets during the period 1991 through 1994, nor did the IRS ever indicate to him during its review of the corporate finances that the expenses of the business were unreasonable. Neither the Revenue Officer's case history nor her testimony dispute Mr. Slater's testimony or indicate that any unreasonable or lavish expenses were detected.

Finally, Mr. Slater testified that in late 1992 he received a letter from the IRS which offered relief for the victims of Hurricane Andrew with respect to federal tax liabilities. Although the letter was never produced, the Revenue Officer acknowledged that such letters were sent to taxpayers in South Florida. Mr. Slater understood that letter to grant an extension for payment without penalty. The Court finds Mr. Slater's testimony to be credible.

The Revenue Officer acknowledges that part of her duties, and the purpose of the IRS "Compliance 2000" program, is to educate taxpayers regarding compliance with respect to the filing of returns and payment of tax liabilities. Yet, Mr. Slater does not recall any explanation by the Revenue Officer of the cumulative penalties for using all available cash to pay delinquent tax liabilities rather than paying current employment taxes, prior to the bankruptcy. In addition, the

Revenue Officer did not recall, nor do her notes and case history indicate that she ever educated the Debtor with respect to the difference between the payment of current funds to current taxes as opposed to back taxes, with respect to the penalties being incurred.[2] In addition, although the Revenue Officer's history indicates that she confirmed current compliance, the record does not support such a verification of compliance, and she confirmed that the entry in the history was questionable.

Rather, a review of the financial situation of Slater Corporation reveals that this Debtor was paying the IRS sufficient sums to substantially liquidate the tax liability on a timely and current basis for the periods at issue. However, upon receipt, only some of the funds were applied to the liabilities for the tax quarter in which the deposits were made. The remainder of the payments were applied toward the Debtor's oldest tax liabilities. As a result, an unpaid balance remained in each successive tax quarter and penalties for nonpayment were assessed.

These penalties, and the interest which accrued thereon, are the subject matter of the Debtor's objection. Specifically, the Debtor objects to the $48,989.60 in penalties related to unpaid taxes of $78,397.86, the portion of the $19,931.71 interest due to those penalties, and the general unsecured penalties and interest thereon, in the amount of $367.73.[3]

At trial, the Debtor introduced the testimony and report of a former IRS Agent. The witness re-calculated the failure to deposit penalties and failure to pay penalties for all periods from January 1991 through December 1994. This recalculation applied all payments made by the Debtor for employment taxes to the month or period in which they were paid, and then carried overpayments forward. The re-calculation was based on information obtained from the employment tax returns filed by the Debtor for the years 1991, 1992, 1993, and 1994, as well as the transcripts of account provided by the IRS.

---

2. The Revenue Officer discussed the 100% penalty which is not at issue here.

3. The proof of claim provides no break down between failure to deposit and failure to pay penalties.

The witness' report concluded that had the payments to the IRS been applied to the current tax liabilities, the failure to deposit penalty would have decreased by $33,505.60, and the failure to pay penalty would have decreased by $12,598.13, for a total decrease in penalties in the amount of $46,103.73.[4]

The report did not consider the additional tax liabilities, penalties, and interest which would have accrued on the unpaid balances remaining on the oldest liabilities had the Debtor's payments not been credited to those liabilities, but rather to the current obligations. For example, the IRS proof of claim as filed did not state a claim for the fourth quarter of 1990 as the Debtor's payments were used to satisfy all outstanding tax liabilities for that quarter. However, if all payments credited to the fourth quarter of 1990 are removed and applied to later quarters, there would remain an unpaid balance in 1990 upon which penalties may be assessed.

## CONCLUSIONS OF LAW

Employers are required to withhold federal social security (FICA) and income taxes

4. The expert report and testimony concluded the following:

| Period | Tax | Payments | IRS penalties | | Re-calculated Penalties |
|---|---|---|---|---|---|
| **1991** | | | | | |
| 1st | 47,992.07 | 20,578.81 | FTD: | 2,197.55 | 4,111.96 |
| | | | FTP: | 1,096.83 | 6,853.50 |
| 2nd | 46,976.40 | 17,030.68 | FTD: | 4,697.64 | 5,081.34 |
| | | | FTP: | 234.88 | 7,187.04 |
| 3rd | 51,756.61 | 139,053.38 | FTD: | 6,619.02 | 73.27 |
| | | | FTP: | 718.53 | –0– |
| 4th | 58,911.51 | 7,620.04 | FTD: | 8,711.64 | –0– |
| | | | FTP: | 10,156.25 | –0– |
| **1992** | | | | | |
| 1st | 35,591.22 | 52,352.67 | FTD: | 3,276.59 | –0– |
| | | | FTP: | 3,447.41 | –0– |
| 2nd | 25,446.96 | 11,140.11 | FTD: | 3,046.58 | –0– |
| | | | FTP: | 2,797.25 | –0– |
| 3rd | 26,753.94 | 2,066.96 | FTD: | 3,909.74 | –0– |
| | | | FTP: | 3,841.67 | –0– |
| 4th | 25,260.36 | 41,588.04 | FTD: | 3,163.29 | 477.63 |
| | | | FTP: | 318.62 | –0– |
| **1993** | | | | | |
| 1st | 28,935.73 | 28,696.50 | FTD: | 4,155.53 | 2,503.91 |
| | | | FTP: | 2,902.51 | –0– |
| 2nd | 28,711.51 | 34,706.95 | FTD: | 1,730.75 | 242.89 |
| | | | FTP: | 875.68 | –0– |
| 3rd | 32,377.37 | 46,337.37 | FTD: | 2,343.55 | 880.38 |
| | | | FTP: | –0– | –0– |
| 4th | 28,062.02 | 31,846.02 | FTD: | 1,777.19 | –0– |
| | | | FTP: | –0– | –0– |
| **1994** | | | | | |
| 1st | 21,458.73 | 44,827.79 | FTD: | –0– | –0– |
| | | | FTP: | –0– | –0– |
| 2nd | 20,340.34 | 24,826.30 | FTD: | 691.70 | –0– |
| | | | FTP: | 119.32 | –0– |
| 3rd | 27,822.11 | 24,403.21 | FTD: | –0– | –0– |
| | | | FTP: | –0– | –0– |
| 4th | 25,277.48 | 35,914.77 | FTD: | 556.07 | –0– |
| | | | FTP: | 26.72 | –0– |

from employees, and pay over the withheld amounts to the IRS. 26 U.S.C. §§ 3101, 3102(a), (b), 3402, and 3403. They are also required to pay their portion of the social security taxes. 26 U.S.C. § 3111. An employer is required to deposit the employment and income taxes withheld from employees' wages in a federal depository at various intervals during the calendar quarter, depending on the amount withheld. 26 U.S.C. § 6302 and Treas.Reg. Section 301.6302–1.

Failure to comply with the statutory requirements may subject a taxpayer to the imposition of penalties. Specifically, 26 U.S.C. § 6656 requires that federal tax deposits (for payroll taxes) be made within a certain number of days of the payroll. The penalty is assessed in the amount of 2% of the deposit if the deposit is less than five days late, 5% if the deposit is five to fifteen days late, and as much as 15% if the deposit is more than fifteen days late.[5] In addition, 26 U.S.C. § 6651 provides that a penalty of ½ % per month, up to a total of 25%, shall be added for failure to pay the amount of tax shown on the return, on or before the due date for payment.[6] Thus, together these penalties reach a cap over a period of time of forty percent (40%).

■ Caselaw and legislative history indicate that the primary purpose of these penalties is to ensure compliance. *United States v. Boyle,* 469 U.S. 241, 245, 105 S.Ct. 687, 689–90, 83 L.Ed.2d 622 (1985); Committee Reports on P.L. 101–239 (Omnibus Reconciliation Act of 1989).

In order to obtain relief from these penalties, the taxpayer must show that the failure to deposit and failure to pay is due to reasonable cause and not due to willful neglect. 26 U.S.C. §§ 6656, 6651. Neither willful neglect nor reasonable cause is defined in the statutes. Rather, the definition for reasonable cause can be found in 26 C.F.R. 301.6651–1(c)(1):

A failure to pay will be considered to be due to reasonable cause to the extent that the taxpayer has made a satisfactory show-

ing that he exercised ordinary business care and prudence in providing for payment of his tax liability and was nevertheless either unable to pay the tax or would suffer an undue hardship, as described in Section 1.6161–1(b) of this chapter, if he paid on the due date. In determining whether the taxpayer was unable to pay the tax in spite of the exercise of ordinary business care and prudence in providing for payment of his tax liability, consideration will be given to all the facts and circumstances of the taxpayer's financial situation, including the amount and nature of the taxpayer's expenditures in light of the income (or other amounts) he could, at the time of such expenditures, reasonably expect to receive prior to the date prescribed for the payment of tax.... A taxpayer will be considered to have exercised ordinary business care and prudence if he made reasonable efforts to conserve sufficient assets in marketable form to satisfy his tax liability and nevertheless was unable to pay all or a portion of the tax when it became due.

■ Willful neglect is defined by case law as a "conscious, intentional failure or reckless indifference." *U.S. v. Boyle,* 469 U.S. 241, 105 S.Ct. 687, 83 L.Ed.2d 622 (1985); *In re Roberts Metal Fabrication, Inc.,* 147 B.R. 965 (Bankr.D.Kan.1992).

■ "Undue hardship" is more than an inconvenience to the taxpayer. Treas.Reg. 1.6161–1(b). Rather, it must appear that timely payment of the tax would result in substantial financial loss. For example, loss due to the sale of property at a sacrifice price as a result of the timely payment of the tax. "Undue hardship" is considered by some Courts to include insolvency, or the threat of insolvency. *In re Arthur's Industrial Maintenance Inc.,* 92–1 U.S.T.C. para. 50,242, 1992 WL 132563 (Bankr.W.D.Va.1992); *In re Pool & Varga, Inc.,* 60 B.R. 722 (Bankr. E.D.Mich.1986); *Glenwal–Schmidt v. U.S.,* 78–2 U.S.T.C. para. 9610, 1978 WL 4527 (D.Colo.1978).

---

5. The penalty is 10% unless the IRS gives notice and demand for immediate payment, at which point the penalty is 15%.

6. This penalty is increased to 1% per month after the IRS gives notice and demand for payment.

■ The IRS argues that the Debtor's failure to pay its tax liabilities was due to willful neglect. Specifically, the IRS states that the Debtor paid available funds to other creditors rather than the United States, thereby making the government its lender of choice. The IRS further maintains that no reasonable cause can exist for the delinquencies as the Debtor was not managed with ordinary business care and prudence. As evidence for this lack of care, the IRS cites the Debtor's failure to employ an accountant, attorney, comptroller, or other financial advisor to assist in the management of its income and expenses.

■ The IRS is correct that willful neglect can be found when a Debtor favors other creditors over the government. *Brewery, Inc. v. U.S.*, 33 F.3d 589 (6th Cir.1994). However, such is not the case in the matter presently before the Court. It is undisputed that the Debtor was timely filing his tax returns and, to the extent possible, making tax deposits that if applied to current tax obligations, would have kept the Debtor reasonably stable. Moreover, not only was the Debtor using its best efforts to meets it tax obligations, but the Debtor's principal was contributing personal assets to keep the Debtor operating.

Specifically, the evidence reflects that the Debtor and its principals contributed substantial funds over the four year period 1991 through 1994 to pay the tax liabilities, while also paying its necessary business expenses. In this respect, it is important to note that the Debtor was operating as a general construction contractor working primarily on bonded and governmental projects. This type of work results in constant delays in payment and normally requires a 10% retainage to be withheld from the Debtor. In addition, these contracts normally require that subcontractors and suppliers be paid from each draw or payment as a condition to receipt of payment by the Debtor. Therefore, the Debtor could not always control when it received its payments. Moreover, the Debtor would normally be obligated to pay subcontractors and suppliers from those funds. As such, the Debtor was not voluntarily favoring other creditors over the IRS.

The only evidence presented demonstrates that the Debtor used ordinary care and prudence in its business dealings. The Debtor believed that if it challenged the demands of the Revenue Officer, it would have been subject to an IRS seizure and sale and would have forfeited bonds and been forced out of business.

The Court recognizes that the application of Debtor's current tax payments to current taxes would not have resolved the Debtor's liability for the older taxes. However, payments of the older taxes could have been resolved in any number of ways, including payment through this confirmed Chapter 11 plan.

In support of its actions, the IRS argues that its application of the payments to the oldest tax liabilities was consistent with IRS guidelines. Application of a taxpayer's partial payments to the IRS, is governed by Revenue Ruling 73–305, 1973–1 C.B. 43, as amended by Revenue Ruling 79–284, 1979–2 C.B. 83. Revenue Ruling 73–305 required partial payments to be applied to the earliest unpaid tax liability. However, withheld employment taxes were specifically excepted from such payment application. Revenue Ruling 79–284 amended the prior ruling and provides that withheld employment tax partial payments should be applied, not necessarily to the earliest period first, but "in a manner serving the best interest of the Service."

It is interesting to note that the Revenue Officer assigned to this case testified that allowing the Debtor to pay current tax liabilities with current funds would be in the best interest of the Debtor and, to the extent that such application would have given the taxpayer a better chance at survival, would also be in the best interest of the government. Yet, by way of example, in March 1993, the Revenue Officer knew in fact that current liabilities were unpaid, and instead routinely applied the funds received to the oldest unpaid tax liability, seemingly contrary to both the purpose propounded for the penalties and the IRS' own Revenue Rulings.

Whether the "best interests" of the government are, in fact, served by the payment application method used by the government

in this case is beyond the scope of this Court's determination. A primary purpose of the tax system is to encourage and instill compliance. Education of taxpayers is essential to that compliance. However, in this case, the result of the IRS' own demands and routines, contrary to that purpose, pyramided penalties rather than encouraged compliance.

The issue at bar is whether the Debtor has shown reasonable cause for failure to timely deposit and failure to timely pay the employment tax liabilities. Considering the above, I find that the Debtor's failure to timely pay the employment tax liabilities was not due to willful neglect. The evidence reveals that the Debtor and its principals contributed substantial funds from 1991 through 1994 to pay the tax liabilities, and that had the funds been applied toward the Debtor's current tax obligations, certain of the penalties would not have accrued. Here, the IRS maximized the aggregate penalties in each successive quarter by demanding and applying current funds to old periods, which had already incurred the maximum penalties.

In sum, this Debtor is entitled to relief from the subject penalties in that the failure to timely deposit and pay the taxes for each period at issue was due to reasonable cause and not due to willful neglect.

As provided hereinafter, the IRS will be provided with an opportunity to file an amended proof of claim which shall provide for the calculation of penalty and interest on the old taxes, as well as any penalty and interest that may have accrued as a result of the underpayment on any of the current taxes. This amended proof of claim will then be dealt with in the Debtor's current Chapter 11 plan of reorganization.

Finally, with respect to the issue of sanctions to be imposed against the United States pursuant to the July 3, 1995 Order of this Court, pursuant to the above findings, it is not necessary to sanction the United States with an abatement of the penalties.

### ORDER

In accordance with the foregoing findings of fact and conclusions of law, it is

**ORDERED AND ADJUDGED that**

1. The Debtor's Objection to the Internal Revenue Service proof of claim is sustained without prejudice as set out hereinafter.

2. Pursuant to the objection, the claim of the IRS is hereby reduced by the penalties and interest on those penalties;

3. The IRS is authorized to file an amended proof of claim within 30 days of service of this Order;

4. Based on the above findings with respect to the penalties, the motion of the Debtor for sanctions against the United States for actions during the discovery process is DENIED.

DONE AND ORDERED.