In the Matter of **WE CARE COMMUNITY ECONOMIC DEVELOPMENT CORPORATION, INC.,** Debtor.

**Bankruptcy No. 97–10055.**

United States Bankruptcy Court,
E.D. Louisiana.

Sept. 19, 1997.

---

**6.** Although *Rosenfeld* dealt with cooperative association dues, the court believes that the holding of the case applies to other types of property ownership. The Fourth Circuit examined cases concerning different types of ownership associations to resolve whether post-petition cooperative assessments were discharged. *Rosenfeld*, 23 F.3d at 836 n. * ("[T]he analysis of whether the debtor's liability for post-petition assessments is extinguished by the discharge is essentially the same.").

Leon Rudloff, Metairie, LA, for Debtor.

Stevens Moore, Assistant U.S. Attorney, New Orleans, LA, for the IRS.

John M. Bilheimer, Trial Attorney, Tax Division, U.S. Department of Justice, Washington, DC.

Martha S. Morgan, LA Department of Public Safety and Corrections, Baton Rouge, LA, for the Secretary.

## REASONS FOR ORDER

JERRY A. BROWN, Bankruptcy Judge.

This matter came before the court on May 27 and June 11, 1997 as a hearing on: (1) the

debtor's motion to determine tax liability (Pl. 57); and (2) the debtor's motion for rehearing of order denying motion to transfer funds deposited into the registry of the court to the debtor. (Pl. 53). At issue is whether the debtor should be relieved from paying interest and penalties on federal taxes owed.

## I. *Facts*

1. Under contract with the State of Louisiana, the debtor operates a residential rehabilitation facility for young persons. The Louisiana Department of Corrections and Department of Education funds the debtor's facility.

2. In 1994, the debtor began to fall delinquent in the payment of its federal employment tax obligations.

3. All employers are required to make periodic deposits of their FICA and withholding taxes, with the frequency of the required deposits dependent upon how often they pay their employees and the size of the enterprise's payroll. Deposits are to be made with any federally-insured bank. The business is given a supply of deposit coupons, which are to accompany the tax deposits and on which the taxpayer indicates the type of tax and the tax period to which the deposit should be credited. In the debtor's case, the deposits are required to be made each time it makes a payroll, which is twice a month.

4. For 1994, the debtor did not make the required tax deposits for any of the four calendar quarters. (U.S. Ex. A–D). It filed its quarterly FICA and withholding tax returns (Form 941) timely for the first two quarters (U.S. Ex. A, B), but filed the third- and fourth-quarter Forms 941 and its annual federal unemployment tax return (Form 940) late. (U.S. Ex. C, D, M). It did not pay any of its employment taxes for 1994 on time. (U.S. Ex. A–D, M).

5. Because of the debtor's delinquencies in filing returns, making tax deposits, and paying its employment tax obligations for 1994, the Internal Revenue Service ("IRS"), assessed penalties against the debtor. (U.S. Ex. A–D, M).

6. In March, 1995, the debtor's delinquent tax accounts were assigned for collection to IRS Revenue Officer Diane Brown.

7. In her initial interview with the debtor, on March 24, 1995, Ms. Brown met with Robert Brinson, the debtor's owner, director, and chief executive officer. Mr. Brinson stated that he had overall responsibility for all of the debtor's functions, and described himself as "Director/Cook/Maintenance Man". (U.S. Ex. P, pp. 1, 2; U.S. Ex. R).

8. Ms. Brown testified that in her first interview she stressed to Mr. Brinson the importance of the debtor keeping current with its ongoing tax obligations as they accrued and in making timely federal tax deposits. (U.S. Ex. P, p. 2). Ms. Brown stated that Mr. Brinson advised her that he had recently changed the office staff and reassumed primary management responsibility. She stated that she advised him of the importance of being paid up on his federal tax obligations, and that he realized the importance of doing so. (*Id.*) She also gave Mr. Brinson a deadline of April 3, 1995 within which to file the debtor's employment tax returns for the end of 1994, which were then overdue, and for furnishing proof of the required tax deposits for the first quarter of 1995. (U.S. Ex. P, p. 2).

9. The debtor did not file the tax returns until June 29, 1995. (U.S. Ex. D, M). Other than the one deposit that had already been made by the time of the initial interview, the first-quarter tax deposits were never made. (U.S. Ex. E).

10. The debtor continued to fail to make its tax deposits and to pay its employment taxes on time during the remainder of 1995, although it did make several tax payments without designating where the payments should go. It was late in filing its Form 941 for the first quarter of 1995, and was late in filing its 1995 Form 940. The IRS assessed additional penalties for these delinquencies. (U.S. Ex. E–H, N).

11. In September, 1995, Mr. Brinson told Ms. Brown that the debtor would pay its delinquent tax obligations in full by November 20, and make interim payments before that time. (U.S. Ex. P, p. 7). It did not do so. (U.S. Ex. E, F, G, and P, p. 8).

12. In November, 1995 and January, 1996, Mr. Brinson stated that he realized the

importance of keeping current on the ongoing tax obligations. (U.S. Ex. P, pp. 8, 11).

13. In February, 1996, the debtor engaged an accountant, Doyle Freeman, to represent it in its dealings with the IRS. Mr. Freeman stated that the business intended to obtain a bank loan to pay the entire outstanding tax debt. Ms. Brown gave the debtor a deadline of 30 days, or until March 7, 1996, within which to obtain the loan and pay the taxes. That deadline was not met. (U.S. Ex. P, pp. 11, 12).

14. In March, 1996, a year after Ms. Brown's first contact with Mr. Brinson and after numerous missed deadlines, the IRS took its first forced collection action, in the form of levies served on the debtor's bank and on the State of Louisiana. (U.S. Ex. P, pp. 12–14).

15. During 1996, the debtor continued to fail to make adequate tax deposits or pay its taxes on time. (U.S. Ex. I–L). It filed two of its 1996 Forms 941 and its 1996 Form 940 late. (U.S. Ex. J, K, O). The Form 940 was not filed until after the pending trial began. The IRS assessed penalties against the debtor for failure to make its 1996 tax deposits, failure to pay its employment taxes timely, and failure to file timely returns. (U.S. Ex. I–L).

16. The IRS issued additional levies in June, July, and November, 1996 because of the debtor's continuing delinquencies and missed deadlines. (U.S. Ex. P, pp. 22–25, 36–39).

17. In addition to the deposit, late filing, and late payment penalties assessed against the debtor, it had also been assessed with two penalties for tendering bad checks in attempted payment of its tax obligations. (U.S. Ex. B, E).

18. In August, 1996, Mr. Brinson wrote the IRS to request that the penalties and interest that had been assessed against the debtor be abated. (Dtr. Ex. 12).

19. The IRS responded to the request for abatement, by telling Mr. Brinson that interest could not be abated, and that he needed to submit a further written request for abatement of the penalties, stating specifically which penalties and which tax periods were being addressed and what reasons the debtor had for requesting abatement. (U.S. Ex. P, p. 31).

20. Ms. Brown testified that the debtor never submitted any further request for abatement of any of the penalties.

21. The debtor filed its Chapter 11 petition on January 6, 1997. The instant motion to determine tax liability was filed on March 7, 1997.

22. The debtor apparently does not contest the principal amount of tax that the IRS claims to be due, but only contests the amount of penalties and interest owing.

23. Prior to the trial in this matter, the IRS discovered that one $5,000 payment, made on or about July 14, 1995, had been improperly credited to an unrelated taxpayer. Ms. Gae Canal, an IRS manager for special proceedings, agreed that the $5,000 amount should be credited to the debtor, that any related penalties and interest should be abated, and that an amended proof of claim will be filed reflecting those additional credits.

24. The debtor should also be credited with an additional $180 tax payment due to a tax deposit that had been credited to another taxpayer because the debtor used a different taxpayer identification number on its payment. When the IRS corrected its records to reflect the payment, a transposition error occurred.

25. Other than the $5,000 payment made in July, 1995, and the $180 error, the debtor has not shown that it has paid any sums toward its tax obligations that the IRS has failed to credit to its account.

26. On some of the tax payment checks tendered by the debtor to the IRS, the debtor designated the taxes to which the payments were to be applied. The IRS honored all such designations on checks made by the debtor.

27. Ms. Canal testified that even if some payment or credit made by the debtor had been applied to an incorrect tax or tax period, it would make no difference as to the debtor's total liability for such interest. In-

terest accrues on all past-due tax obligations and on all penalties at the same rate.

28. Other than the relatively few tax deposits the debtor made, the IRS generally credited the debtor's payments made during 1995 and 1996 to the oldest tax debts then outstanding.

29. Ms. Brown testified that she advised the debtor on several occasions of the difference between payment of current taxes and payment of past-due obligations.

30. The debtor was also aware of the manner in which tax deposits were to be made and the manner in which designations are made when a taxpayer makes a tax deposit, as shown by the fact that it did make some of the required deposits. Despite that knowledge, it made far fewer than half of the deposits it should have made. (U.S. Ex. A–L).

31. Even if the debtors 1995 and 1996 payments were now to be credited toward the then-current taxes, instead of toward the 1994 or early 1995 periods to which they have been credited, that change would create an underpayment for those 1994 and 1995 tax periods which the IRS credited with those payments.

## II. Analysis

### A. Motion to determine tax liability

#### 1. Principal amount of taxes owed

The IRS has agreed to credit to the debtor the $5,000 payment made by the debtor that had been erroneously credited to another taxpayer, and to correct the $180 error. The IRS's first proof of claim was filed on March 25, 1997 in the total amount of $96,186.61. (Claim No. 16). The IRS has filed two amending proofs of claim since then. Proof of Claim No. 18, filed on June 24, 1997, reduced the total amount of taxes claimed to be owing to $89,613.70. (Claim No. 18). Proof of Claim No. 19, filed on August 12, 1997, reduced the total amount of taxes claimed to be owing to $79,051.00. (Claim No. 19). It is unclear to the court as to whether both credits were actually made be-

cause the secured claim of the IRS, reflecting FICA taxes for the period of 12/31/95, remained the same amount of $35,047.76 through all three proofs of claim. To the extent that the credits were not made, they will have to be made.

Other than these two credits, the debtor and the IRS appear to agree as to the principal amount of taxes owed, excluding interest and penalties.

#### 2. Interest

▮▮▮ Interest is due on any underpayment of tax. Such interest is merely compensation for the government's loss of use of the money that should have been paid. It is not imposed to penalize the taxpayer. *United States v. Childs*, 266 U.S. 304, 45 S.Ct. 110, 69 L.Ed. 299 (1924); *Suffness v. United States*, 974 F.2d 608, 612 (5th Cir.1992); *Bowman v. United States*, 824 F.2d 528, 531 (6th Cir.1987); *Vick v. Phinney*, 414 F.2d 444, 448 (5th Cir.1969).

The debtor's request for rebate of the interest may not be maintained.

#### 3. Penalties

The debtor argues strenuously that the IRS used "illegal acts" to put the debtor "out of business". (Pl. 111, Debtor's Post–Trial Memorandum, p. 5). The court disagrees. The debtor's argument is long on rhetoric, but short on evidence. Having considered the credibility and demeanor of the witnesses, the court finds that the facts do not support the debtor's assertion. To the contrary, the IRS worked with the debtor for some time before taking any enforcement action, and permitted large amounts of overdue taxes to accrue before taking action. (*See e.g.* U.S. Ex. P, 40–42).

▮▮▮ The debtor also failed to show that the IRS took any "illegal" actions in connection with its enforcement actions against the debtor.[1] For example, the debtor in effect argues that the IRS had to file a notice of assessment before each levy, and that the IRS's failure to do so each time was "illegal".

---

1. Any procedural questions about the IRS's collection activities are irrelevant to the issue before the court as to how much tax is owed. If the

debtor has a complaint against the IRS for its collection procedures, its remedy lies elsewhere. *See e.g.* IRC §§ 7432,.7433.

This is incorrect. An assessment is the formal entry of a tax debt on the books of the IRS. *See* 26 U.S.C. ("Internal Revenue Code" or "IRC") § 6203. Notice of the assessment and demand for payment are required to be sent to the taxpayer's last known address within 60 days after the assessment is made. 26 IRC § 6303. The IRS did assess the debtor on October 23, 1995, along with interest and a failure to deposit penalty. (U.S. Ex. F). This is the only notice of assessment required.

The debtor argues at length that the IRS was required to apply all payments it received, from whatever source, to the debtor's tax obligations for the then-current tax period, rather than applying them to older obligations that were delinquent from earlier tax periods. The debtor refers to this as the FIFO, or first-in, first-out, issue.

The debtor makes much of the May 20, 1997 report of the Federal Tax Deposit Rules Issues Subgroup of the IRS Commissioner's Advisory Group ("Subgroup Report"). (Pl. 111, Ex. B). The reliance is unwarranted. First, the Subgroup Report has not been made into law, and only represents its authors' views as to what regulations or procedures the IRS should adopt regarding the application of tax deposits. Second, the FIFO problem under consideration in the Subgroup Report is the IRS's practice of allocating deposits and assessing penalties with respect to *tax deposits* made within the quarter whose liability is at issue. It does not address issues concerning payments made in forms other than tax deposits, nor does it address the question of application of payments to previous quarters.

Penalties for failure to pay federal taxes timely, failure to file returns, and failure to make proper estimated tax deposits are to be imposed unless the taxpayer shows that the failure was "due to reasonable cause and not due to willful neglect". 26 IRC §§ 6651, 6656.

Penalties for tendering bad checks are to be imposed unless the taxpayer shows that it tendered the check in good faith and with reasonable cause to believe that it would be paid upon presentment. IRC § 6657.

■ The taxpayer has the burden of showing reasonable cause to justify abatement of tax penalties. *Chilingirian v. Commissioner,* 918 F.2d 1251, 1255 (6th Cir. 1990); *In re Upton Printing Co.,* 186 B.R. 904, 905–06 (Bankr.E.D.La.1995). Reasonable cause sufficient to avoid these penalties "may be established if the taxpayer can make a satisfactory showing that it exercised ordinary business care and prudence in providing for payment of the taxes but nevertheless was either unable to pay or would have suffered an undue hardship if it had paid on the due date." *Id.,* at 905–06. The debtor's financial difficulties do not provide reasonable cause for not assessing penalties for nonpayment of withholding taxes. *Id.,* 186 B.R. at 907.

The debtor has argued that some or all of its 1995 and 1996 payments should have been credited to the taxes that were due or coming due for the then-current tax quarter.

■ The problem with this argument is that the debtor generally failed to designate the taxes or tax periods to which the payments were to be credited. In the absence of a valid designation from the taxpayer regarding the taxes or tax periods to which collected funds should be applied, the IRS has the right to apply the funds as it sees fit. *Wood v. United States,* 808 F.2d 411, 416 (5th Cir.1987); *Liddon v. United States,* 448 F.2d 509, 513 (5th Cir.1971). The debtor was clearly aware of the manner in which tax payments could have been designated, as shown by the fact that a few of its payments were so designated.

The debtor's reliance on *In re Slater Corp.,* 190 B.R. 695 (Bankr.S.D.Fla.1995) is misplaced. *Slater* does not discuss the case law cited above which permits the IRS to apply however it wishes funds that have not been designated by the taxpayer. Further, in *Slater,* the debtor did not know the difference between payment of funds to current taxes as opposed to back taxes, with respect to assessment of penalties. In the pending case, the debtor understood the importance of making tax deposits, and knew (at least some of the time) of its right to designate tax payments.

Even if the debtor's 1995 and 1996 payments were to be credited toward the then-current taxes instead of toward the 1994 or 1995 periods to which they have in fact been credited, that change would create an underpayment for those 1994 and 1995 tax periods which the IRS credited with those payments. If that were to occur, the IRS should be allowed to amend its claim herein to assert unpaid liabilities for those periods. *See In re Slater Corp.*, 190 B.R. at 701 (Bankr.S.D.Fla.1995).

The debtor has not sustained its burden of proof with respect to any of the taxes, interest, or penalties claimed by the IRS, with the exception of the $5,000 payment made on or about July 14, 1995. The amounts claimed by the IRS are correct.

B. *Motion for reconsideration of denial of turnover*

Finally, the debtor requests reconsideration of the denial of its turnover motion. The court denied the turnover request because the debtor had declined to furnish adequate protection. The debtor has continued to fail to address the adequate protection issue. Under *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983), adequate protection is a precondition to turnover of property in which a creditor has a security interest. The debtor has still failed to address that point. Accordingly, the motion for rehearing will be denied.

An order will be entered in accordance with these reasons.

### ORDER

For the reasons assigned in the foregoing reasons for order issued this date, accordingly,

**IT IS ORDERED** that the debtor's motion to determine tax liability is **DENIED.**

**IT IS FURTHER ORDERED** that within 10 days the Internal Revenue Service is to file an amended proof of claim which corrects the misapplication of the $5,000 payment made by the debtor and the $180 payment resulting from transposition error or shall

notify the court that this has already been done.

**IT IS FURTHER ORDERED** that the debtor's motion for rehearing of order denying the motion to transfer funds deposited into the registry of the court to the debtor is **DENIED.**