Kyle A. VICK, Jr., in his capacity as independent executor of the Estate of Lucille M. Hooper, deceased, Plaintiff-Appellant,

v.

Robert L. PHINNEY, Defendant-Appellee.

No. 26662.

United States Court of Appeals Fifth Circuit.

July 15, 1969.

Rehearing Denied Aug. 8, 1969.

Laurance C. Mosher, Jr., Charles W. Hall, J. Robert Dickerson, Houston, Tex., for appellant; Fulbright, Crooker, Freeman, Bates & Jaworski, Houston, Tex., McKay & Avery, Austin, Tex., of counsel.

Johnnie M. Walters, Asst. Atty. Gen., Tax Div., Lee A. Jackson, Elmer J. Kelsey, Issie L. Jenkins, Harry Marselli, David English Carmack, Attys., Dept. of Justice, Washington, D. C., John O. Jones, Dept. of Justice, Tax Div., Fort Worth, Tex., Ernest Morgan, U. S. Atty., Warren N. Weir, Asst. U. S. Atty., San Antonio, Tex., Mitchell Rogovin, Asst. Atty. Gen., Washington, D. C., for appellee.

Before BELL and THORNBERRY, Circuit Judges, and CHOATE, Senior District Judge.

CHOATE, Senior District Judge:

Vick, the appellant, is the executor of the estate of his mother, Lucille Hooper. Phinney, the appellee, is a District Director of Internal Revenue. The ultimate question for decision is whether Vick is entitled to a 4 percent rate of interest on an entire estate tax liability of $596,813.58, or whether $479,718.26 of the total tax liability is subject to a 6 percent rate. This suit was brought for refund of the 2 percent difference that was assessed and paid on the latter sum.

Mrs. Hooper died on August 19, 1956, and, under her will, Vick, her son by a

former marriage, was appointed independent executor of her estate. Before their marriage in 1935, Mr. and Mrs. Hooper each possessed property of significant value. During their 21 years of marriage, the Hoopers continued to amass even greater fortunes, most of which were under the control and in the possession of Mr. Hooper. The Texas community property system came into play, however, and Vick, upon his mother's demise, felt that much of the assets controlled by Hooper were includable in the estate.

Hooper furnished an audit that showed community assets in his hands with a cost value of $357,000. Vick was not persuaded. An independent accounting firm was engaged and the resulting audit showed that Hooper held community property with a cost value in excess of $2,000,000. Meanwhile, the time for filing the estate tax return was approaching and Vick realized that he could not file a timely yet complete return if his contention was correct regarding the assets controlled by Hooper. Thus came the first of five extensions.

Vick applied for an extension of six months in which to file the return and of twelve months in which to pay the tax. In his application, Vick explained his difficulties with Hooper, pointing out that Hooper retained control over potentially taxable property having a market value of approximately $5,000,-000. In short, he needed time.

By letter dated November 15, 1957, the District Director granted the extensions:

"Your request for an extension of time to file the Federal Estate Tax Return, Form 706, for the above-named estate is granted to the date shown above [May 19, 1958]. Your request for an extension of time for payment of any tax which may be shown to be due on the return is also granted to the date shown [November 19, 1958].

Under the provisions of Section 6161 (a) (2) * * *, where an extension of time has been granted for paying any portion of the tax shown on the executor's return, in accordance with Section 6601(b), interest thereon accrues at the rate of 4 percent in lieu of 6 percent as provided in Section 6601(a)."

Six months did not suffice, however, as Mr. Hooper was not prepared to part with millions without a fight. Because the Code precluded further extension to file a *return*, Vick, on May 19, 1958, filed what he labeled a "tentative return" on form 706. The tax on the amount shown thereon was $117,095.32. On the return (or a "supplement" to it), Vick explained that it was necessarily incomplete. He reiterated his difficulties with Hooper and declared his intention to file a complete return as soon as it was possible to do so.

Two months later, suit was filed against Mr. Hooper. Vick thus requested another extension of the *payment* date ("for payment of the estate tax found to be due") calling attention to the "tentative return" that was previously filed. On November 20, 1958, the District Director granted a one year extension, stating as follows:

"Your request for an additional extension of time for payment of the tax shown to be due on the Federal Estate Tax Return, Form 706, for the above-named estate is granted [for one year].

Under the provisions of Section 6161 (a) (2) * * *, where an extension of time has been granted for paying any portion of the tax shown on the executor's return, in accordance with Section 6601(b), interest accrues thereon at the rate of 4 percent in lieu of 6 percent as provided in Section 6601(a)."

Subsequently, three more extensions were requested and granted.[1] The reasons assigned for the requested exten-

---

1. The reply letters granting the extensions contained the same language quoted above regarding the 4% interest rate.

sions related to the fact that potentially taxable assets were tied up in the Hooper litigation and to administrative problems encountered by the estate in obtaining title to and possession of those assets when the litigation ultimately concluded, by way of settlement, in Vick's favor. Prior to the fifth and final extension, Vick delivered what he called his "complete" return, showing thereon a tax of $604,913.65 (later adjusted to $596,813.58).[2]

Thus comes the crux of the matter. Vick was then informed that the 4% rate applied to the amount shown on the "tentative" return but that 6% interest was due on the remainder. Vick paid and filed the instant suit for refund of interest.

The case was submitted to a jury on one written interrogatory, which was answered as follows:

"We the jury, find from a preponderance of the evidence that the District Director extended the time for payment of $596,813.58 of estate tax."

The government's motion for judgment N.O.V. was granted and this appeal followed. We affirm.

Vick rests his case on 26 U.S.C. § 6161(a) (2) which provides that

If the Secretary or his delegate finds—

(A) that the payment, *on the due date*, of any part of the amount *determined by the executor as the tax*

imposed by chapter 11, * * * would result in undue hardship to the estate, he may extend the time for *payment* for a reasonable period not in excess of 10 years from the date prescribed by Section 6151(a) for payment of the tax.[3]

The 4% interest rate regarding such extensions in conferred by § 6601(b).

■ Succinctly stated, appellant maintains that the "amount determined by the executor as the tax" to which § 6161(a) (2) refers is not necessarily the amount which was shown by him on the "tentative" return and that the District Director is empowered to and did in fact[4] grant hardship extensions regarding the then undetermined amounts of tax that were ultimately reported on the "complete" return. The appellee counters that, notwithstanding whatever misunderstandings that might have been created by the language contained in the District Director's various extension letters,[5] the quoted phrase must be read as applying to the amount shown by the executor on a *timely filed return*. As a matter of statutory construction, we must agree that § 6161(a) (2) is applicable only to the tax shown on a return that is timely filed.

■■ Our starting point is the import of the basic difference, sought to be overlooked by Vick, between the time for filing the return and the time for paying the tax. The Code is quite clear that a return *must* be filed no later than 21 months from the date of the de-

2. Prior to this time, Vick had made two partial tax payments and one partial interest payment.

3. The government has apparently conceded, for the purpose of this case, that Vick's efforts in litigation were a "hardship" within the meaning of the statute. We thus express no opinion on this element of the case.

4. The jury's role in this case is not abundantly clear. Even on appeal, the parties cannot agree on what the jury actually decided. We are convinced, however, that the verdict was meaningful only if it was presumed that the District Director was

legally empowered to grant a 4% rate on the undetermined tax liability and the question for the jury was whether he in fact did so. Our holding that he was not so empowered obviates the necessity of determining whether there was adequate evidence to support the verdict.

5. It is our guess that whatever strength may be given to Vick's factual argument, to the effect that the District Director was reasonably understood to have granted 4% extensions for the entire tax, is attributable to the District Director's rather indiscriminate use of form letters in this administration of this case.

cedent's death.[6] Congress simply did not authorize the Secretary or his delegate to extend the time for filing the return beyond that point. Thus, despite Vick's attempts to the contrary, his "tentative" return was indeed his return for purposes of the matters under consideration.[7] The tax was due, without interest or penalty, when the return was due. 26 U.S.C. § 6151(a). The date for *payment,* however, may be extended, with interest accruing at the appropriate rate, for much longer periods.

Section 6161(a)(2), upon which Vick relies, is one such provision. But the phrase therein now relied upon ("the amount determined by the executor as the tax") cannot be isolated from the overall statutory scheme for the reporting and collection of tax.

Section 6161(a)(2) allows hardship extensions for the *payment* of tax for a period up to 10 years from the date the return is due.[8] It does not refer to nor allow an extension of time to *report* tax that is due. The *reporting* of tax is accomplished on the return. As noted, the time for reporting the tax (i. e., filing the return) is expressly limited to 21 months from the date of death. To hold that § 6161(a)(2) authorizes the extension of payment of unreported and undetermined amounts of tax would be to hold that § 6161(a)(2) authorizes extensions, up to 10 years, of the time for filing the return (i. e., reporting the tax). § 6161(a)(2) is not susceptible of this construction.[9]

In point of fact, any tax due that was not shown on the first return was a deficiency within the meaning of the Code.[10] A "deficiency" is the amount by which the tax imposed "exceeds the * * amount shown as the tax by the taxpayer upon his return * * *." § 6211(a)(1)(A). Thus, the amounts of tax due from the estate that were not reported on the timely filed return, whether discovered by the taxpayer or the government, were, by definition, deficiencies. Hardship extensions for the payment of deficiencies in estate tax are separately covered by § 6161(b)(2) which, not unexpectedly, does not provide for a 4 percent rate of interest.

6. 26 U.S.C. § 6075 requires that the return be filed within 15 months from death. By § 6081, the Secretary or his delegate, here Mr. Phinney, can extend the time for filing the return for *not more than* six months. An exception to the foregoing not relevant here, is made regarding taxpayers that are abroad.

7. The regulation [20.6081–1(c)] provides as follows:

   (c) A return as complete as possible must be filed before the expiration of the extension period granted. The return thus filed will be the return required by Section 6018(a) and any tax shown thereon will be the "amount determined by the executor as the tax" referred to in Section 6161(a)(2), or the "amount shown as the tax by the taxpayer upon his return" referred to in Section 6211(a)(1)(A). The return cannot be amended after the expiration of the extension period although supplemental information may subsequently be filed that may result in a finally determined tax different from the amount shown as the tax by the executor on the return. * * *

8. The statutory language is "from the date prescribed by section 6151(a) for payment of the tax." That section provides that "when a return of tax is required under this title * * * the person required to make such returns shall * * * *pay such tax at the time* and place *fixed for filing the return* * * *."

9. Indeed, § 6161(a)(2) applies, by its terms, to "the amount *determined* by the executor as the tax." It is difficult to perceive how the amount "determined" as the tax can refer to an amount that is admittedly not determined. Vick answers this by saying that the phrase refers to THE estate tax and not to the portion that was reported on the "tentative" return. As we have noted, however, "THE tax" was due to be paid when the return was due to be filed. Cf. United States v. Northwestern Mutual Ins. Co., 315 F.2d 723, 725 (9 Cir. 1963).

10. "Additional tax shown on an 'amended return,' so called, filed after the due date of the return, is a deficiency within the meaning of the Internal Revenue Code." Mertens, Federal Gift and Estate Taxation, § 46.25 at 271 (1960).

Finally, we might point out that there is no particular inequity involved in the requirement that interest at 6 percent be paid on tax found to be due after the return was filed. Interest, in tax cases as in others, is merely compensatory; it is not a penalty. Time, Inc. v. United States, 226 F.Supp. 680, 686 (S.D.N.Y. 1964), affirmed 337 F.2d 859 (2 Cir.); P. Lorillard Co. v. United States, 226 F.Supp. 694, 698 (S.D.N.Y.1964), affirmed 338 F.2d 499, (2 Cir). And, although we are not so informed, we assume that interest was included in the amounts recovered by Vick in the Hooper litigation. In any event, interest is assessed in order to compensate a creditor, here the government, for the period during which it was deprived of the use of the money, not merely because the party liable is presumed to have used the funds to advantage during the period of delayed payment. The extent to which appellant properly received the 4 percent rate may be considered a result of legislative grace.

The judgment of the District Court is Affirmed.