149 T.C. No. 17

UNITED STATES TAX COURT

CREDITGUARD OF AMERICA, INC., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1332-16L.            Filed October 10, 2017.

R revoked P's tax-exempt status retroactively to Jan. 1, 2002. In a subsequent deficiency proceeding P executed a stipulated decision document, agreeing to assessment of a deficiency for its 2002 tax year and of underpayment interest on that deficiency "as provided by law."

R accrued and assessed interest on the deficiency from the date on which P's 2002 corporate tax return would have been due. When that amount remained unpaid, R began collection action. In a collection due process proceeding, P disputed its underlying liability, arguing that interest can begin accruing no earlier than the date on which R issued the final determination revoking P's tax-exempt status, notwithstanding the retroactive character of that revocation.

1. <u>Held</u>: Retroactive revocation of P's tax-exempt status requires restoring R to the position R would have occupied if P had never enjoyed tax-exempt status during its 2002 tax year.

2. <u>Held</u>, <u>further</u>, P is liable for interest beginning on the date its 2002 corporate tax return would have been due.

3. <u>Held</u>, <u>further</u>, the SO did not abuse his discretion in sustaining the proposed collection action.

<u>Matthew T. Journy</u> and <u>Carrie Garber Siegrist</u>, for petitioner.

<u>Scott A. Hovey</u>, for respondent.

OPINION

LAUBER, <u>Judge</u>: In this collection due process (CDP) case petitioner seeks review pursuant to sections 6320 and 6330(d)(1)[1] of the determination by the Internal Revenue Service (IRS or respondent) to uphold a notice of Federal tax lien (NFTL) filing. The parties have filed under Rule 121 cross-motions for summary judgment presenting what seems to be a question of first impression in this Court. That question concerns the proper computation of interest on a tax deficiency where the IRS has retroactively revoked a corporation's tax-exempt status under section 501(a) and (c)(3).

---

[1]All statutory references are to the Internal Revenue Code (Code) in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure. We round all monetary amounts to the nearest dollar.

The IRS revoked petitioner's tax-exempt status in 2012, made the revocation retroactive to January 1, 2002, and eventually issued it a notice of deficiency for that year. Petitioner timely petitioned this Court and, on November 30, 2012, we entered a stipulated decision in that case. Our decision determined a deficiency of $216,547 in petitioner's Federal income tax for 2002. The parties included a below-the-line stipulation that underpayment interest would later be assessed "as provided by law."

Upon revocation of its tax-exempt status, petitioner became obligated to file Form 1120, U.S. Corporation Income Tax Return, for 2002. Respondent contends that the starting date for computing interest on the deficiency is determined by reference to the date prescribed by law for filing a Form 1120 for 2002 by a corporation that uses the calendar taxable year, which in this case would be March 17, 2003. Petitioner contends that the starting date for computing interest is February 1, 2012, the date on which the IRS issued the final determination letter revoking its tax-exempt status. Concluding as we do that respondent has the better side of this argument, we will grant his motion for summary judgment, deny petitioner's cross-motion, and sustain the proposed collection action.

## Background

The following facts are derived from the parties' pleadings and motion papers, including the attached declaration and exhibits. Petitioner had its principal place of business in Florida when it filed its petition.

Petitioner was incorporated in Florida in 1991 as a nonprofit corporation engaged principally in credit counseling. In December 1993 the IRS issued petitioner a favorable determination letter recognizing it as an organization exempt from Federal income tax under section 501(a) and (c)(3). In May 2003 petitioner filed with the IRS, as required by section 6033(a)(1), an information return on Form 990, Return of Organization Exempt From Income Tax, for its 2002 calendar taxable year. See sec. 6072(e).

In December 2003 the IRS commenced an examination of petitioner's Form 990 for 2002. At the conclusion of this examination and the ensuing administrative process, the IRS issued to petitioner, on February 1, 2012, a final adverse determination letter revoking its tax-exempt status retroactively to January 1, 2002. This letter informed petitioner: "You are required to file Federal income tax returns on Forms 1120 for the tax periods stated in the heading of this letter and for all tax years thereafter."

When petitioner did not promptly file a Form 1120 for 2002, the IRS prepared on its behalf a substitute for return (SFR) that met the requirements of section 6020(b). On June 6, 2012, on the basis of that SFR, the IRS issued petitioner a notice of deficiency, and in response petitioner timely petitioned this Court. See CreditGuard of Am., Inc. v. Commissioner, docket No. 21935-12 (filed Aug. 30, 2012). On November 30, 2012, we entered a stipulated decision in that case, deciding that there was a deficiency in income tax of $216,547 due from petitioner for 2002. Our decision recited the parties' further stipulation that "interest will be assessed as provided by law on the deficiency in income tax due from petitioner."

On March 13, 2013, the IRS assessed the $216,547 deficiency as well as interest of $142,185 on that deficiency. Under the IRS' computation, interest began accruing on March 17, 2003, the date prescribed by law for filing a Form 1120 for 2002 by a corporation using the calendar taxable year.[2]

In an effort to collect these unpaid liabilities, the IRS sent petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing. Petitioner timely requested a CDP hearing. On its hearing request form it checked the boxes captioned "installment agreement," "offer in compromise," and lien "withdrawal."

---

[2]Ordinarily, the due date for a corporate tax return for 2002 would have been March 15, 2003. Because that day was a Saturday, the due date was pushed back two days to the following Monday. See infra p. 11.

Following numerous email and telephone exchanges, a settlement officer (SO) from the IRS Appeals Office held a face-to-face CDP hearing with petitioner's representative on June 11, 2015. With respect to its underlying tax liability, petitioner sought abatement of most of the assessed interest. It contended that the earliest the interest could begin accruing would be the date on which the IRS assessed the deficiency, March 13, 2013, rejecting the IRS' position that liability for interest would be governed by the date on which the Form 1120 was due for filing, March 17, 2003.

The SO allowed petitioner to challenge its underlying liability in this respect, but he rejected petitioner's argument on the merits. Under the applicable Code provisions, he determined, "interest is to be charged on unpaid taxes from the date the taxes were due until the date they are paid." He thus concluded that the IRS had correctly calculated interest by reference to the due date for the Form 1120 that petitioner was obligated to file for 2002.

With respect to collection alternatives, petitioner submitted two offers-in-compromise (OICs). The first OIC, submitted June 10, 2015, was returned for failure to include the required initial payment. The second OIC, submitted July 21, 2015, offered to compromise petitioner's outstanding 2002 liability (then

about $354,532) for $96,000. But petitioner withdrew that offer by letter dated October 30, 2015, and did not submit another offer.

Petitioner also sought withdrawal of the NFTL. Noting that petitioner was currently making payments toward satisfaction of its 2002 liability with the NFTL in place, the SO concluded that lien withdrawal was not necessary to facilitate collection. And he determined that petitioner had not met the other conditions set forth in section 6323(j) for withdrawal of the NFTL.

On December 17, 2015, the IRS sent petitioner a notice of determination sustaining the collection action for the reasons outlined above. On January 19, 2016, petitioner timely petitioned this Court. The petition did not dispute the SO's rejection of the proposed collection alternatives. Rather, the sole error alleged in the petition is that the SO "erred in failing to abate interest unlawfully assessed on the amount of the underlying liability." The petition based this assignment of error on the premise that the starting date for calculating interest should have been February 1, 2012, the date on which the IRS mailed the final adverse determination letter revoking petitioner's tax-exempt status.[3]

---

[3]The petition also contended that interest abatement was required by section 6404(g), which mandates suspension of interest in certain situations where the IRS does not promptly contact the taxpayer. However, this provision applies only "[i]n the case of an individual who files a return * * * on or before the due date for the

(continued...)

The sole question remaining for decision concerns the starting date for calculating interest on petitioner's 2002 tax deficiency.  On January 19, 2017, respondent filed a motion for summary judgment addressing this issue.  On February 24, 2017, petitioner filed an objection to respondent's motion and, on February 27, 2017, a cross-motion for summary judgment.

## Discussion

A.    Summary Judgment Standard

The purpose of summary judgment is to expedite litigation and avoid costly, time-consuming, and unnecessary trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  The Court may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law.  Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994).  The question presented is purely one of law.  The parties agree that no material facts are in dispute, and they have expressed that

---

[3](...continued)
return (including extensions)."  Sec. 6404(g)(1)(A).  Because petitioner is not "an individual," section 6404(g) does not apply here.  See H.R. Conf. Rept. No. 105-599, at 260 (1998), 1998 U.S.C.C.A.N. 288 (noting that interest suspension "applies only to individuals").  In its motion for summary judgment petitioner explicitly abandoned any argument based on section 6404(g).

consensus by filing cross-motions for summary judgment.  We conclude that this case is appropriate for summary adjudication.

B.      Standard of Review

Section 6330(d)(1) does not prescribe the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. Where the taxpayer has properly challenged its underlying tax liability for the year in question, we review the IRS determination de novo.  Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).  A taxpayer may challenge the existence or amount of its underlying liability in a CDP proceeding only "if the person did not receive any statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute such tax liability."  Sec. 6330(c)(2)(B).

Petitioner seeks to challenge its underlying liability for 2002 only with respect to the interest assessed on the deficiency.  The amount of interest properly assessable was not (and could not have been) considered by this Court in petitioner's prior deficiency case.  See White v. Commissioner, 95 T.C. 209, 213 (1990) (holding that underpayment interest is excluded from the definition of a "deficiency" in section 6211).  And respondent agrees that petitioner has had no other

prepayment opportunity to dispute such interest.[4]  Petitioner properly advanced its challenge to the assessed interest during the CDP hearing, and the SO considered and rejected its argument.  We review de novo his determination to this effect.

C.     Analysis

Section 6601(a)(1) provides:  "If any amount of tax imposed by this title * * * is not paid on or before the last date prescribed for payment, interest on such amount * * * shall be paid for the period from such last date to the date paid."  Section 6601(b) provides that "the last date prescribed for payment of the tax shall be determined under chapter 62."  Chapter 62 includes section 6151, captioned "Time and Place for Paying Tax Shown on Returns."  It provides that, "when a return of tax is required under this title," the taxpayer "shall pay such tax at the time * * * fixed for filing the return (determined without regard to any extension of time for filing the return)."  Sec. 6151(a).

---

[4]In certain circumstances this Court is authorized to reopen a deficiency case, within one year after our decision has become final, "solely to determine whether the taxpayer has made an overpayment of * * * interest."  Sec. 7481(c)(1); Rule 261.  But we have jurisdiction to do this only if "the taxpayer has paid the entire amount of the deficiency plus interest claimed by the Secretary."  Sec. 7481(c)(2)(A)(ii); Rule 261(b)(2)(A).  Respondent concedes that this provision did not afford petitioner a prior opportunity to dispute its liability for interest.

Section 6072(b) would have determined the timely filing of a corporate income tax return for the taxable year 2002.[5] It provided that the return of a corporation using the calendar taxable year "shall be filed on or before the 15th day of March following the close of the calendar year." See sec. 1.6012-2(a)(3), Income Tax Regs. That day, March 15, 2003, was a Saturday. Thus, for a corporate taxpayer using the calendar taxable year, the due date for its 2002 Form 1120 was Monday, March 17, 2003. See sec. 7503.

Petitioner is a corporation. Upon revocation of its tax-exempt status retroactively to January 1, 2002, it became obligated to file a corporate income tax return on Form 1120 for 2002. Under section 6601(a), interest runs from the "last date prescribed for payment." Under section 6151(a), the "last date prescribed for payment" is the date "fixed for filing the return." Because the date fixed for filing petitioner's 2002 Form 1120 was March 17, 2003, these provisions indicate that petitioner must pay interest on the unpaid tax "for the period from such last date to the date paid." See sec. 6601(a). Respondent accordingly argues, with consider-

_____

[5]Section 6072(b) was amended for tax years beginning after December 31, 2015, by the Surface Transportation and Veterans Health Care Choice Improvement Act of 2015, Pub. L. No. 114-41, sec. 2006(a), 129 Stat. at 457. As amended, section 6072(b) now applies only to returns filed by partnerships and S corporations. The due date for filing returns by C corporations is now governed by section 6072(a), which generally specifies "the 15th day of the fourth month following the close of the fiscal year."

able force, that the starting date for computing interest on petitioner's unpaid 2002 corporate income tax is March 17, 2013.

Petitioner notes that it was tax exempt during 2002, that it correctly filed Form 990 for that year, and that it had no obligation to file Form 1120 until its tax exemption was revoked. It accordingly contends that the starting date for paying interest is governed by section 6601(b)(5), captioned "Last date for payment not otherwise prescribed." That section provides that, "[i]n the case of taxes payable by stamp and in all other cases in which the last date for payment is not otherwise prescribed, the last date for payment shall be deemed to be the date the liability for tax arises."

Section 6601(b)(5) by its terms is inapplicable here. It applies only to taxes payable by stamp and other taxes for which "the last date for payment is not otherwise prescribed." The tax involved here is the corporate income tax. The last date for payment of the corporate income tax is "otherwise prescribed," namely, by section 6072(b). For a calendar year corporate taxpayer in 2002, that date was March 17, 2003.

Even if section 6601(b)(5) applied, it would not help petitioner. Petitioner's corporate income tax liability for 2002 did not "arise" on February 1, 2012, when the IRS mailed the letter revoking petitioner's tax-exempt status. Nor did it arise

on November 30, 2012, when this Court entered a decision determining a deficiency of $216,547 for 2002. And it did not arise on March 13, 2013, when the IRS assessed that tax.

Rather, by virtue of the retroactive revocation of petitioner's tax-exempt status to January 1, 2002, its corporate income tax liability arose during 2002, the calendar year for which it had become a "corporation subject to tax under subtitle A." Sec. 6012(a)(2); see Helvering v. Morgan's, Inc., 293 U.S. 121, 127 (1934) (defining taxpayers' taxable year as "the twelve months' accounting period for which they were bound to report income and pay taxes"). And petitioner's liability for payment of that tax arose on March 17, 2003, the due date of its Form 1120 for 2002. In contending that it had no tax liability for 2002 until 2012, petitioner is ignoring the fact that its tax-exempt status was revoked, not prospectively, but retroactively to January 1, 2002. Retroactive revocation is not just a slap on the wrist; it has real tax consequences.

To be sure, "until we devise time machines, a change can have its effects only in the future." Bergerco Can. v. U.S. Treasury Dep't, Office of Foreign Assets Control, 129 F.3d 189, 192 (D.C. Cir. 1997). But the purpose of making a change retroactive is to suspend reality and invoke a counterfactual premise. Here, the premise is that petitioner was not in fact tax exempt during 2002 but

rather was a corporation subject to the regular corporate income tax. Because petitioner did not actually pay that tax on the date prescribed for payment, it is liable for interest beginning on that date.[6]

Petitioner emphasizes that it could not possibly have paid its 2002 tax liability timely because it did not know on March 17, 2003, that this liability existed. But respondent is not contending that petitioner was negligent and is not seeking to collect an addition to tax for failure timely to pay. Respondent is seeking only to collect interest on the unpaid tax from the date the tax was due to be paid. In so doing, respondent is simply implementing the logical consequences of the retroactive revocation to which petitioner agreed, whereby the IRS is restored to the position it would have occupied if petitioner had never enjoyed tax-exempt status during 2002.[7]

---

[6]Section 6501(g)(2) provides that the filing of a Form 990 by a taxpayer that determines in good faith that it is a tax-exempt organization "shall be deemed the return of the organization" for purposes of starting the period of limitations on assessment. By triggering the start of the three-year limitations period of section 6501(a), the good-faith filing of a Form 990 prevents the IRS from revoking an entity's tax-exempt status for years in the distant past. But if the assessment limitations period remains open, as it was here upon the IRS' prompt examination of petitioner's 2002 Form 990, neither section 6501(g) nor any other Code provision prevents the IRS from assessing the accrued interest.

[7]In any event, by stipulating a $216,547 deficiency for 2002 in the prior deficiency case, petitioner agreed to the revocation of its tax-exempt status retro-

(continued...)

Underpayment interest is designed to compensate the Government for the period during which the taxpayer has enjoyed use of the Government's money. "Interest, in tax cases as in others, is merely compensatory; it is not a penalty." Vick v. Phinney, 414 F.2d 444, 448 (5th Cir. 1969). Under this use-of-funds rationale, "a taxpayer who initially failed to satisfy his tax liability is obligated to pay interest on the taxes due from the date the tax return should have been filed, regardless of whether the failure to pay resulted from the taxpayer's miscalculation or the [G]overnment's redetermination." Brookhurst, Inc. v. United States, 931 F.2d 554, 558 (9th Cir. 1991).

By executing a stipulated decision in the prior deficiency case, petitioner has agreed that it had a corporate income tax deficiency of $216,547 for 2002. It has had use and enjoyment of that $216,547 from March 17, 2003, until now. It has supplied no reason, in law or logic, why it should not have to pay interest as any other corporate taxpayer would have to do.[8]

---

[7](...continued)
actively to January 1, 2002. Petitioner cannot plausibly raise a reliance argument against the consequences of a retroactive revocation to which it agreed. Cf. Dickman v. Commissioner, 465 U.S. 330, 343 (1984) (sustaining the Commissioner's authority to change his position "even though a taxpayer may have relied to his detriment upon the Commissioner's prior position").

[8]Petitioner notes that it was legally required to file a Form 990 for 2002 and
(continued...)

D.    Abuse of Discretion

In deciding whether the SO abused his discretion in sustaining the NFTL filing, we consider whether he:  (1) properly verified that the requirements of applicable law or administrative procedure have been met; (2) considered any relevant issues petitioner raised; and (3) considered "whether any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of * * * [petitioner] that any collection action be no more than intrusive that necessary."  See sec. 6330(c)(3).  We find that the SO properly verified that all requirements of applicable law and administrative procedure were followed.  And petitioner did not dispute in its petition the SO's rejection of the proposed collection alternatives.  Those issues are thus conceded.  See Rule 331(b)(4) ("Any issue not raised in the assignments of error shall be deemed to be conceded.").

---

[8](...continued)
that, if it had filed a Form 1120 instead, it might have been liable for a penalty under section 6652(c)(1).  But respondent is not contending that petitioner was noncompliant in its tax filings or that it should have filed something other than it did.  Respondent is simply seeking to collect interest on a deficiency that arose in 2002 and has not been paid.  The fact that petitioner could not literally have filed a Form 1120 on March 17, 2003, does not negate the existence of a corporate income tax liability for 2002 or entitle petitioner to free use of the Government's money for the ensuing decade.

To reflect the foregoing,

An appropriate order and decision

will be entered.